# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4165 | **DATE** | 10/13/2011 |
| **CASE TITLE** | National Union Fire Ins. Co. Of Pittsburgh, Pa. Vs. Absolute Title Services, Inc. *et al.* | | |

**DOCKET ENTRY TEXT**

Plaintiff National Union's motion for summary judgment [97] is granted. Defendant Michael Collins's partial motion for summary judgment is denied.

■[ For further details see text below.]      Docketing to mail notices.

## STATEMENT

    This is a declaratory judgment insurance coverage action. Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") is the insurer and it seeks a declaration that it does not have either a duty to defend or a duty to indemnify the defendants in a mortgage fraud lawsuit pending in the Circuit Court of Cook County. These defendants are Absolute Title Services, Inc. ("Absolute Title"); its two co-owners, Kalliope Shaykin and Steven M. Shaykin; and two employees, Michael Collins and Erica Villella (collectively, the "ATS defendants.") The plaintiffs in the state court lawsuit are Stewart Title Guaranty Company and National Land Title Insurance Company (collectively, "Stewart Title"). Stewart Title has intervened in this case to help argue the case that the ATS defendants are covered under the ATS insurance policy taken out with National Union.

    The gist of the state court lawsuit filed by Stewart Title is summarized in the first two sentences of introductory paragraph of the amended complaint filed there: "This is a case about ongoing mortgage fraud committed by Defendants, while ATS was writing policies on Stewart Title and National Land paper. Stewart Title and National Land have just recently become aware of Defendants' fraudulent activities, including ATS's and certain ATS employees' failure to pay previous lenders on prior mortgages when closing subsequent mortgages and those Defendants' disbursements of monies to improper recipients, including the other Defendants to this case." (Am. Cmplt. ¶ 1.) As these two sentences make clear, Stewart Title is making a strong claim of fraud. The amended complaint contains detailed allegations about three types of fraudulent mortgage schemes: mortgage stacking, using "straw buyers," and escrow fund theft. The complaint describes how these schemes were carried out with regard to a number of properties and how defendants funneled money to their personal accounts. Stewart Title sought, and obtained from the state court, a temporary restraining order against the ATS defendants. The two individual co-owners of ATS, Kalliope Shaykin and Steven M. Shaykin, have pleaded the Fifth Amendment to questions in this lawsuit.

## STATEMENT

One of the employees, Erica Villella, has not chosen to appear in this lawsuit, and a default judgment has been entered against her. (Docket # 112.)

National Union has filed a motion for summary judgment, as has defendant Michael Collins. The motions are fully briefed and address the same basic issues. However, defendants do raise one initial procedural objection. They complain that this Court should only consider whether the duty to defend applies at this stage of the litigation and should defer the question of whether the duty to indemnify applies until later if and when a judgment is obtained in the state court action. They argue the parties agreed to this two-step procedural approach in their Preliminary Pretrial Scheduling Order (Docket # 53). We agree with this objection and will only consider the duty-to-defend argument in this ruling and will not consider National Union's separate alternative arguments regarding policy exclusions and the known loss doctrine. But as defendants recognize, if we find there is no duty to defend, then it necessarily means there is no duty to indemnify given that the duty to defend is broader. *See Health Care Indus. Liability Ins. Program v. Momence Meadows Nursing Center, Inc.*, 566 F.3d 689, 693 (7th Cir. 2009) ("Where, as here, the duty to defend is broader than the duty to indemnify, a finding of no duty to defend necessarily precludes a finding of a duty to indemnify."); *see also* Preliminary Pretrial Scheduling Order (Docket # 53) (recognizing that the duty-to-defend question is "potentially dispositive"of the remaining issues).

We now turn to the sole legal issue -- whether the liability insurance policy at issue requires National Union to provide a defense for the ATS defendants in the state court mortgage fraud lawsuit. Both sides agree that Illinois law applies. Under Illinois law, how the policy should be interpreted is a question of law for the court to decide. *Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993). This Court compares the allegations of the underlying complaint with the language of the policy, sometimes known as the eight corners rule. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992). In doing so, this Court liberally construes the allegations in favor of the insured. If the facts of the complaint fall within, or *potentially* fall within, the policy's coverage, then there is a duty to defend. *Id.* In making this determination, the Court reads the complaint as a whole. The focus is on the alleged conduct, and little weight should be given to the legal label of the particular claims. *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 2001). If several theories are alleged in the complaint, a duty to defend arises even if only one of them falls within the policy provisions. In several cases, Illinois courts have expressed concern that certain claims, especially if they are conclusory and boilerplate, may have been purposefully inserted into the complaint in order to trigger insurance coverage, thereby increasing the chance of a higher recovery for the plaintiff in the underlying lawsuit. *See, e.g., Pekin Ins. Co. v. Dial*, 823 N.E.2d 986, 992 (Ill. App. Ct. 2005) (stating that the negligence allegations were included in a "transparent attempt to trigger insurance coverage").

Here, as both sides agree, the policy is a liability policy and only covers negligent acts or errors or omissions. (SOF 13.) It does not cover fraud or intentional misconduct. Although defendants recognize that the state court complaint contains many allegations of fraud, they note that there are three counts of negligence among the 13 counts. Count X is a claim for negligent misrepresentation; Count XI is a claim for negligent supervision and is directed only at defendants ATS, Steven Shaykin, and Kalliope Shaykin; and Count XII is a claim for negligence directed only at ATS. Defendants argue that these allegations, contained primarily in paragraphs 180 through 192, are enough to trigger the duty to defend. National Union argues that the negligence allegations are conclusory and are inconsistent with the larger complaint and the detailed allegations of fraud. As set forth below, we agree with National Union's argument.

As is often the case in law, the general rules must be fleshed out by considering how courts have

applied them in specific situations. The key concept here is whether the allegations *potentially* fall within the policy provisions. Illinois courts have generally required something more than a bare theoretical possibility. For example, in *Pekin Ins. Co. v. Dial*, 823 N.E.2d 986 (Ill. Ap. Ct. 2005), the appellate court held the insurer had no duty to defend a man charged with sexually assaulting a woman even though one count of the complaint alleged the touching was due to a "misapprehension of [plaintiff's] desires and wishes." *Id.* at 989. Even though the complaint was "couched in terms of negligence," the Court found no duty to defend because "the complaint alleged a course of conduct that was clearly intentional and not merely negligent or accidental." *Id.* at 992.

Similarly, in *Steadfast Ins. Co. v. Caremark Rx, Inc.*, 835 N.E.2d 890 (Ill. App. Ct. 2005), the appellate court found no duty to defend where both intentional and negligent conduct were alleged. The plaintiffs alleged that Caremark served as a pharmacy benefits manager to various health plan managers throughout the country and that it engaged in a scheme, through rebates and kickbacks, to divert a portion of the discounted drug prices to Caremark's benefit. The policy language was similar to this case, excluding coverage for claims arising from intentional conduct. Applying the general legal framework quoted above, the appellate court found no duty to defend even though the complaint included "terminology usually associated with negligent conduct." *Id.* at 897. Reading the complaint as a whole, the court noted that it was "replete" with allegations of intentional conduct and that the negligence allegations were ultimately predicated upon the underlying fraud allegations. The phrases used in the complaint -- such as "mislead and conceal" and "scheme or device" -- were deemed by the appellate court to be contrary and antithetical to the negligence allegations. *Id.* at 899-90.

Turning to the facts of this case, we find that it is very similar to the *Steadfast* case and that the same result should therefore ensue. To begin with, the amended complaint is clearly focused on a fraudulent scheme. As noted above, it unequivocally announces in the first sentence that this is a case about an "ongoing mortgage fraud." The introductory paragraph uses the word "fraud" or "fraudulent" seven times. These words are repeated throughout the complaint along with synonyms such as "scheme." The complaint goes on to describe in great detail how three different fraudulent schemes were carried out. In particular, the ATS defendants "closed on a number of loan transactions where prior mortgages were supposed to be paid off and released with proceeds from the new loans, but, in fact, were not," and the ATS defendants then took the money and distributed it to "companies and individuals to which they were personally related." (Am. Cmplt. ¶¶ 28, 34.) We will not in this ruling describe all these specific allegations. It is enough to note generally that the amended complaint sets forth in great detail how the transactions were structured and how the money was diverted -- all with regard to a number of different property closings and involving the active participation, to one degree or another, of all the ATS defendants. *See, e.g.* ¶ 101 ("Michael Collins set up a sham account in ATS's electronic system to process transfers of funds for his personal use."). As National Union states in its opening brief (at p. 10), the specific allegations in the body of the complaint never assert -- nor even remotely suggest -- "that any of these 'schemes' resulted from sloppy inadvertence or oversight, which is understandable given the repeated incidents and the magnitude of the loss involved." We agree. The scope and degree of the alleged fraud make it hard to see how the alleged fraud, for example finding straw buyers, could have happened accidentally from negligent professional services.

It is true, as Stewart Title points out, the amended complaint contains three negligence counts. However, as noted above, Illinois courts look to substance over form. The negligence counts are conclusory and contain little detail or explanation of how the diversion of funds in all these transactions could have been the result of simple negligence. The fact that the negligence counts incorporate by reference all the earlier allegations of fraud confirms this point. Neither Stewart Title nor the ATS defendants provide a concrete explanation of how the allegations of negligence fit with the fraud allegations incorporated therein. The only

| STATEMENT |
|---|
| real attempt is to point out that there is a negligent supervision count against Kalliope Shaykin and Steven Shaykin, alleging that they were negligent in not supervising the lower level employees who might have committed the fraud without the Shaykins being directly involved. But again, the allegations in the body of the complaint are contrary because the Shaykins are alleged to be at the center of the fraud, with active involvement in a number of transactions.<br><br>    In sum, we are more persuaded by National Union's arguments, as set forth more fully in their opening and reply briefs. We find the *Steadfast* case is on point. While defendants try to distinguish the case, they point to no other case with similar facts reaching an opposite conclusion. |
|  |